**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Nevarez, Sr., et al., | No. CV-24-01154-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

In June 2023, Robert Nevarez Jr. ("Decedent") died following an encounter with four police officers from the City of Mesa and the City of Tempe. In this action, Decedent's family members have sued both municipalities and the individual police officers, asserting a pair of claims under 42 U.S.C. § 1983 and a pair of state-law tort claims.

Now pending before the Court are a pair of motions to dismiss filed by the various Defendants. (Docs. 32, 34.) For the reasons that follow, both motions are granted.

**BACKGROUND**

I.   Factual Allegations

The factual allegations set forth below are derived from the operative pleading, the First Amended Complaint ("FAC"). (Doc. 29.)[1]

…

---

[1] Although Defendants contend that, for various reasons, the Court need not accept the factual allegations in the FAC as they relate to the details of the encounter, it is unnecessary to resolve that issue here for the reasons discussed in later portions of this order. Accordingly, this summary simply tracks the allegations in the FAC.

A.  **The Parties**

There are two Plaintiffs in this action, Robert Nevarez, Sr. ("Robert") and Veronica Nevarez ("Veronica"). (*Id.* ¶¶ 5-6.) Robert is Decedent's father. (*Id.* ¶ 5.) Veronica is the mother of Decedent's minor children, JE.N. and JA.A. (*Id.* ¶ 6.) Robert alleges that he is bringing suit in two capacities: (1) "individually"; and (2) "as Statutory Beneficiary of [Decedent]." (*Id.* ¶ 7.) Veronica alleges that she is bringing suit in her capacity as "the mother of minor Plaintiffs JE.N. and JA.N, both Statutory Beneficiaries, on Behalf of [Decedent]." (*Id.*)

There are six Defendants in this action. Two of those Defendants, the City of Mesa and the City of Tempe, are Arizona municipal organizations. (*Id.* ¶¶ 8, 9.) The remaining four Defendants are individuals. Peter Klepp and Tatum Falls were City of Mesa law enforcement officers at all times relevant to this action. (*Id.* ¶¶ 10-11.) George Torres and Fidencio Armenta were City of Tempe law enforcement officers at all times relevant to this action. (*Id.* ¶¶ 12-13.)

B.  **The Encounter**

The FAC alleges that "[o]n or about June 9, 2023, at or about 8:40 p.m., Defendants Klepp and Falls responded to a 9-1-1 call from a citizen requesting a welfare check on [Decedent]." (*Id.* ¶ 15.) "At that time, Defendants Klepp and Falls discovered Decedent lying on the ground near the Tempe canal." (*Id.* ¶ 16.) Officers Klepp and Falls then "physically restrained the Decedent and handcuffed him in the prone position while he was still lying on the ground, without any probable cause to do so." (*Id.* ¶ 20.) This was done "in an aggressive manner" involving "excessive force." (*Id.* ¶ 21.) "Decedent was exhibiting signs of physical distress while he was being handcuffed and restrained by Defendants Klepp and Falls." (*Id.* ¶ 23.) Despite this distress, "neither Defendant Klepp [n]or Defendant Falls took any action to render aid to the Decedent while the Decedent was in their custody. (*Id.* ¶ 25.)

Soon after, Officers Torres and Armenta arrived. (*Id.* ¶ 28.) Around this time, "[a]s a result of the unlawful actions of Defendants, as described herein, Decedent reacted in a

defensive manner against the Defendants." (*Id.* ¶ 30.) "Defendant Klepp placed his knee on the Decedent's back, Defendant Falls used her knees to pin down the Decedent's right arm and Defendant Armenta controlled the Decedent's feet while Defendant Torres controlled his feet at one point [and] later placed a spit mask on the Decedent." (*Id.* ¶ 31.) All the while, "Decedent was still handcuffed, showing signs of physical distress and lying on the ground in the prone position." (*Id.*) "Mesa Fire Department assessed the Decedent and requested that Defendant Torres administer Narcan to the Decedent." (*Id.* ¶ 34.) "Defendant Torres then gave the Decedent a dose of Narcan . . . nearly ten (10) minutes after arriving and thirty (30) minutes after Defendants Klepp and Falls originally handcuffed and restrained the Decedent." (*Id.* ¶ 35.) "Thereafter, . . . Klepp and Torres removed the handcuffs." (*Id.* ¶ 36.) Decedent was then transferred to Banner Desert Hospital at 9:45 p.m., where he died at 10:41 p.m. (*Id.* ¶ 37.) The cause of death was "cardiac arrest in the setting of cocaine toxicity, environmental heat exposure and prone positioning with restraints." (*Id.* ¶ 38.)

C. **The Claims**

Based on the preceding factual allegations, Plaintiffs assert the following four claims in the FAC.

In Count One, Plaintiffs assert a § 1983 claim against the four individual Defendants "for violations of Decedent's constitutional rights under color of law," which the FAC then identifies more specifically as "Decedent['s] . . . right to be free from excessive, unreasonable and unjustified force" as guaranteed by "the Fourth Amendment to the United States Constitution." (*Id.* ¶ 68.) The FAC alleges that this "breach caused substantial personal injuries and damages to the Decedent and thereby the beneficiaries of Decedent's estate." (*Id.*)

In Count Two, Plaintiffs assert a § 1983 claim against the two municipal Defendants "for violations of Plaintiffs' Decedent's constitutional rights under color of law." (*Id.* ¶ 80.) The FAC elaborates that, due to the municipal Defendants' alleged training and supervision failures and/or alleged implementation of certain policies, practices, and

customs, the municipal Defendants should be liable for the Fourth Amendment violations allegedly committed by the individual Defendants. (*Id.* ¶¶ 81-93.) Count Two concludes: "[T]he established customs, practices, patterns and official policies of the Defendant Mesa and Defendant Tempe constituted a substantial risk of constitutional deprivation, and, as a direct and proximate result of which, Decedent, has sustained . . . violation of Decedent's constitutional rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution." (*Id.* ¶ 94.)

In Count Three, Plaintiffs assert a state-law wrongful death claim against the municipal Defendants under A.R.S. § 12-611. (*Id.* ¶¶ 95-102.)

In Count Four, Plaintiffs assert a state-law assault-and-battery claim against the municipal Defendants. (*Id.* ¶¶ 103-09.)

II. Procedural Background

On May 17, 2024, Plaintiffs filed the complaint. (Doc. 1.)

On August 9, 2024, Plaintiffs filed the FAC. (Doc. 29.)

On August 23, 2024, Defendants City of Mesa, Klepp, and Falls (together, "the Mesa Defendants") filed a motion to dismiss. (Doc. 32.) That same day, Defendants City of Tempe, Torres, and Armenta (together, "the Tempe Defendants") filed a motion to dismiss. (Doc. 34.) The motions are now fully briefed. (Docs. 43, 44, 45, 46.) No party requested oral argument.

**DISCUSSION**

I. <u>Standing—Counts One and Two</u>

A. **The Parties' Arguments**

As noted, the only two federal claims in this action are the § 1983 claims in Counts One and Two, both of which are premised on the violation of Decedent's Fourth Amendment right to be free from excessive force. (Doc. 29 ¶ 68 [Count One: "Plaintiffs claim damages for the injuries set forth herein under 42 U.S.C. § 1983 . . . for violations of Decedent's constitutional rights under color of law. . . . [Under] the Fourth Amendment to the United States Constitution, Decedent had the right to be free from excessive,

1  unreasonable and unjustified force . . . .]; *id.* ¶ 94 [Count Two: "[T]he established customs, practices, patterns and official policies of the Defendant Mesa and Defendant Tempe constituted a substantial risk of constitutional deprivation, and, as a direct and proximate result of which, Decedent, has sustained . . . violation of Decedent's constitutional rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution."].)

The Mesa Defendants and the Tempe Defendants both argue that Plaintiffs lack standing to bring those claims because only the personal representative of an estate may bring a § 1983 action to vindicate the constitutional rights of a decedent and neither Plaintiff has secured an appointment as the personal representative of Decedent's estate. (Doc. 32 at 4; Doc. 34 at 5-6.)

In response, Plaintiffs argue that although "federal courts are to apply state law in deciding *who* may bring a § 1983 action on a decedent's behalf," "this Court must look to Arizona's wrongful death statute in determining the proper plaintiffs, which clearly states that a decedent's *parent, spouse or children* may bring a wrongful death action for their own claims under the Fourth Amendment." (Doc. 43 at 5; Doc. 44 at 5.) Plaintiffs also assert that they "are in the process of appointing a personal representative for Decedent's estate" and request leave to amend in the event the Court finds they lack standing. (Doc. 43 at 6 & n.1; Doc. 44 at 6 & n.1).

In reply, the Mesa Defendants emphasize that "[i]t is well-established, by statute and numerous District Court and Ninth Circuit cases, that a Personal Representative must be appointed to bring federal claims for Fourth Amendment violations allegedly suffered by the decedent." (Doc. 45 at 2.) The Mesa Defendants argue that "[w]hile it is correct that this Court is to look to the state law to address the issue of standing, the relevant statute is A.R.S. § 14-3110, not A.R.S. §§ 12-611-13. Arizona law only authorizes a Personal Representative to bring a survival action." (*Id.*) The Tempe Defendants make similar arguments and contend that Plaintiffs failed to "distinguish or refute" their cited authorities. (Doc. 46 at 2.)

…

- 5 -

B. **Analysis**

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir.1987) ("The children [of the decedent] were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory."). "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), as amended (Nov. 24, 1998). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Id.*

Arizona law only authorizes the personal representative of a decedent's estate to bring a survival action. *See* A.R.S. § 14-3110. Thus, courts in the Ninth Circuit have repeatedly concluded that when, as here, an Arizona resident is killed due to an alleged use of excessive force, only the personal representative of the decedent's estate may bring a § 1983 action premised on the violation of the decedent's Fourth Amendment rights. *See, e.g., Longoria v. Pinal Cnty.*, 873 F.3d 699, 711 (9th Cir. 2017) ("Only Longoria's estate may bring a § 1983 for the violation of his Fourth Amendment rights; his family members have no standing to sue on their own behalves. The Supreme Court has made this abundantly clear."); *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1059-60 (D. Ariz. 2020), *aff'd*, 2023 WL 6157407 (9th Cir. 2023) ("Mr. Andrich's estate (via its personal representative, Louise Andrich) is not the only plaintiff in this action. Three of Mr. Andrich's siblings (Louise Andrich, in her individual capacity, and minor siblings AL.A and AM.A) also seek to assert the § 1983 claims . . . premised on the violation of Mr. Andrich's constitutional rights, not the constitutional rights of the siblings. . . .

Accordingly, all plaintiffs in this action will be dismissed except for Louise Andrich, in her capacity as personal representative of the decedent's estate."). Because Plaintiffs concede that neither of them has been appointed as the personal representative of Decedent's estate, it follows that they lack standing to assert the Fourth Amendment-based § 1983 claims in Counts One and Two of the FAC.[2]

II.  Leave To Amend

Plaintiffs request leave to amend in the event of dismissal so they can "include the personal representative of Decedent's estate as a representative Plaintiff in this case." (Doc. 43 at 6; Doc. 44 at 6.) The Tempe Defendants respond that "Plaintiffs lack standing to assert the Fourth Amendment claims and therefore the First and Second claims for relief should be dismissed with prejudice." (Doc. 46 at 2-3.) They add: "The Response claims that a personal representative is in the process of being appointed but provide[s] no proof; it has been more than a year since Decedent's death. In any case, this alleged process does not provide the Plaintiffs standing." (*Id.* at 3 n.2, cleaned up.) The Mesa Defendants' position is more ambiguous: "As to the federal claims, Plaintiffs must obtain a Personal Representative appointment to bring any of their claims. Until this occurs, Plaintiffs cannot proceed forward to litigate any Fourth Amendment or *Monell* claims." (Doc. 45 at 7.)[3]

Rule 15(a) of the Federal Rules of Civil Procedure "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The parties have made no attempt to analyze how Rule 15 should apply when, as

---

[2] This outcome makes it unnecessary, at least for now, to resolve Defendants' other grounds for seeking dismissal of Counts One and Two.

[3] The Mesa Defendants also seek the dismissal, with prejudice, of a certain aspect of Counts One and Two for a reason unrelated to standing. (*Id.*)

here, the reason for an amendment request is to add a plaintiff who would possess statutory standing to pursue the existing claims that the existing plaintiffs lack statutory standing to assert. The Court's independent research suggests a lack of consensus on this issue. Some courts have concluded that amendment should be allowed in this circumstance. *See, e.g., Keaton v. L & W Supply Corp.*, 2008 WL 846114, *1-2 (M.D. Fla. 2008) (granting amendment request, where "Defendant moved to dismiss, noting that the proper plaintiff is not the estate but the personal representative," and emphasizing that "Defendant will suffer no prejudice from the amendment. Instead, the action will go forward just as would have occurred if the amended complaint had been filed at the outset. That plaintiff took two tries to get it right instead of one has made no difference at all."); *Laborers' Pension Fund v. Leopardo Const., Inc.*, 139 F.R.D. 634, 635-36 (N.D. Ill. 1991) (granting amendment request, where "Defendant has moved to dismiss the complaint and plaintiffs seek to file an amended complaint which will name the proper plaintiff," and noting that the only "net effect" of granting the amendment request rather than requiring the proper plaintiff to file a new lawsuit, "which he has a right to do anyway," was to excuse the proper plaintiff "from paying a separate filing fee"). Other courts have suggested that the better approach is to deny the amendment request and require the proper plaintiff to file a new lawsuit. *See, e.g., Galilee Baptist Church v. Church Mutual Ins. Co.*, 2008 WL 11354941, *1 n.1 (E.D. La. 2008) (noting that an amendment request was denied where "the proposed pleading abandons the original plaintiff and seeks to substitute another entity with its own claims and would be tantamount to an entirely new lawsuit") (cleaned up); *Automated Info. Processing, Inc. v. Genesys Solutions Group, Inc.*, 164 F.R.D. 1, 4 (S.D.N.Y. 1995) ("[T]he plaintiff's motion to amend should be denied, and the present complaint filed by a non-existent party should be dismissed without leave to amend. If the proposed 'new' plaintiffs believe they have rights to assert, they should institute a new action in their own names.").

The Court concludes, in its discretion, that the former approach is most consistent with the policies underlying Rule 15. Accordingly, Plaintiffs' amendment request as to

Counts One and Two is granted in that Plaintiffs will have 21 days to file a Second Amended Complaint ("SAC") that names the personal representative of Decedent's estate as a plaintiff and clarifies that Counts One and Two are only being asserted by that plaintiff.[4]

III.     State-Law Claims—Counts Three and Four

Defendants also seek the dismissal of Plaintiffs' state-law claims in Counts Three and Four for a host of reasons. The Court finds it unnecessary to reach the merits of those dismissal arguments because "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendent state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction.").

Here, the parties all appear to be Arizona citizens (Doc. 29 ¶¶ 5, 8-13) and the FAC does not, at any rate, allege that the Court possesses diversity jurisdiction over any of Plaintiffs' claims. Thus, the Court only possesses federal-question jurisdiction over Plaintiffs' § 1983 claims in Counts One and Two and supplemental jurisdiction over Plaintiffs' state-law claims in Counts Three and Four. Now that the § 1983 claims have been dismissed, the Court may, in its discretion, decline to continue exercising supplemental jurisdiction over Counts Three and Four.

The *Cohill* factors counsel against retaining supplemental jurisdiction here. First, this case is less than a year old and no trial date has been set, so declining jurisdiction will cause minimal duplication of effort. *Cf. Fitzhugh v. Miller*, 2020 WL 1640495, *9 (D.

---

[4]     It should go without saying that Plaintiffs must have actually arranged for the new plaintiff's appointment as personal representative of Decedent's estate by the time of the SAC's filing. Many months ago, Plaintiffs represented that they were "currently in the process of appointing a personal representative for Decedent's estate." (Doc. 44 at 6 n.1.) The new deadline established by this order gives them ample time to complete that process.

Ariz. 2020) (concluding the same for a less-than-a-year-old case). Second, it appears the Maricopa County Superior Court is at least as convenient a forum as this Court. All of the parties appear to reside in Maricopa County and all counsel are based in Maricopa County. *Cf. Shooter v. Arizona*, 2019 WL 2410808, *8 (D. Ariz. 2019), *aff'd*, 4 F.4th 955 (9th Cir. 2021) (concluding the same under similar circumstances). As to the remaining factors, considerations of fairness, federalism, and comity are best served by allowing the Arizona state courts to address state-law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *see also Roundtree v. Atl. Dev. & Inv.,* 2009 WL 2132697, *3 (D. Ariz. 2009) (dismissing federal claim and then declining to exercise supplemental jurisdiction over remaining state-law claims: "The Court is mindful that the exercise of supplemental jurisdiction may serve the values of judicial economy and convenience . . . but these values are outweighed by the interests of comity and federalism.") (cleaned up); *Floyd v. Watkins*, 2015 WL 5056036, *6 (D. Or. 2015) ("The Court closely examined the sole federal law claim [under § 1983] and resolved it in favor of Officer Watkins. State court is a convenient forum for the parties, and declining to exercise supplemental jurisdiction respects the values of federalism and comity.").

For these reasons, the Court declines to exercise jurisdiction over Counts Three and Four and dismisses them without prejudice. This dismissal is with leave to amend, but only if Plaintiffs file a SAC that reasserts the federal claims in Counts One and Two utilizing a proper plaintiff.

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that:

1. The Mesa Defendants' motion to dismiss (Doc. 32) is **granted**.

2. The Tempe Defendants' motion to dismiss (Doc 34) is **granted**.

3. The FAC (Doc. 29) is **dismissed**.

4. Plaintiffs may file a Second Amended Complaint ("SAC") within 21 days of the issuance of this order. If Plaintiffs file a SAC, the changes shall be limited to naming the personal representative of Decedent's estate as a plaintiff and clarifying that Counts One and Two are only being asserted by that plaintiff. Additionally, Plaintiffs shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

5. If Plaintiffs do not file a SAC within 21 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 18th day of February, 2025.

Dominic W. Lanza
United States District Judge